IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
April 24, 2001 Session

## STATE OF TENNESSEE v. FREDDY ALLEN PERRY

**Appeal as of Right from the Circuit Court for Giles County**
**No. 7,585-6     Robert L. Jones, Judge**

---

**No. M2000-00013-CCA-R3-CD  - Filed September 7, 2001**

---

The appellant, Freddy Allen Perry, pled guilty in the Giles County Circuit Court to four counts of aggravated assault and was sentenced as a standard Range I offender to a total effective sentence of ten years incarceration in the Tennessee Department of Correction.  On appeal, the appellant challenges the trial court's denial of full probation and judicial diversion.  Upon review of the record and the parties' briefs, we conclude that the trial court erred in failing to state on the record its reasons for denying full probation and judicial diversion; therefore, we reverse the judgment of the trial court and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Reversed and Remanded.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID H. WELLES and ALAN E. GLENN, JJ., joined.

Robert D. Massey, Pulaski, Tennessee, for the appellant, Freddy Allen Perry.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Mike Bottoms, District Attorney General; and Richard Dunavant, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

During the late night hours of July 3, 1995, and the early morning hours of July 4, 1995, the appellant, who had consumed a large amount of alcohol, was riding around Pulaski with several friends.  The friends decided to go to Magazine Road Park to purchase marijuana.  The appellant testified at the sentencing hearing that he did not intend to purchase marijuana but was just along for the ride.  The drug sale soon went awry, resulting in an altercation during which the appellant fired his pistol toward a vehicle driven by Zachariah Mills and Adrianne Calahan.  Officers

Thomas and McNairy of the Pulaski Police Department were dispatched to the park after receiving a report of shots being fired there. Upon arriving at the park, they encountered Mills and Calahan.

Mills and Calahan admitted to the investigating officers that they had planned to meet the appellant and his friends at the park in order to sell them some marijuana. Mills told the officers that, when he reached the park, one of the individuals in the appellant's vehicle became upset when Mills told them he did not have the marijuana. The individual ordered Mills to get out of the vehicle. Another individual jumped in the bed of Mills' truck and shattered the windshield. When Mills attempted to drive away, the appellant fired several shots toward the truck.

Several hours later, during the early morning hours of July 4, Officer Thomas was dispatched to Consumer's Market in response to a call reporting a shooting. When officers arrived at the market, they found William Birdsong and Anthony Claude, employees of the Pulaski Electric System. Birdsong had been shot. Birdsong related that he and Claude had been sent to a job site and were driving through the north end of Pulaski when someone threw bottles and fireworks at their truck. Birdsong pulled into the parking lot at Consumer's Market and attempted to call 911. He was unable to reach 911 and was advised by a bystander that the two men should leave the area because someone was going to be shot. Birdsong and Claude left the market and went to a nearby job site. Later, as they returned from the job site, they pulled into the Consumer's Market parking lot where they saw the appellant shooting a gun in the air five or six times. When the appellant pointed the gun at the two men, they ducked down in the truck seat and waited for "a minute or two." When Birdsong raised his head to determine if they could safely leave, the appellant shot through the truck windshield, striking Birdsong on the top of the ear. Following an investigation, the appellant was charged with four counts of attempted first degree murder.

On October 26, 1999, the appellant entered best interest guilty pleas as a Range I standard offender to four counts of aggravated assault in return for sentences of five years for each count. The sentence on count two was ordered to be served consecutively to the other three sentences, for a total effective sentence of ten years. The appellant requested a sentencing hearing so that the trial court could determine the manner of service of the sentence. Following a sentencing hearing, the trial court denied the appellant's request for judicial diversion and ordered periodic confinement in the Giles County Jail in conjunction with a ten-year term of probation. On appeal, the appellant raises the following issues: (1) whether the trial court properly denied the appellant's request for judicial diversion, and (2) whether the trial court properly denied the appellant full probation.

## II. Analysis
### A. Judicial Diversion

Tenn. Code Ann. § 40-35-313(a)(1)(A) (1997) details the procedure commonly referred to as judicial diversion:

> If any person who has not previously been convicted of a felony or a
> Class A misdemeanor is found guilty or pleads guilty to . . . a Class
> C, D or E felony, the court may, without entering a judgment of guilty

and with the consent of such person, defer further proceedings and place the person on probation upon such reasonable conditions as it may require, and for a period of time . . . not more than the period of the maximum sentence of the felony with which the person is charged.

However, "[t]he fact that an accused meets these prerequisites does not entitle the accused to judicial diversion as a matter of right. . . . [W]hether an accused should be granted judicial diversion is a question which addresses itself to the sound discretion of the trial court." State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). Thus, if the record contains "'any substantial evidence to support the [trial court's] refusal'" to grant judicial diversion, we will uphold the determination of the trial court. Id. at 167 (citing State v. Hammersley, 650 S.W.2d 352, 356 (Tenn. 1983)). We also note that "[t]he same guidelines are applicable in diversion cases as are applicable in probation cases, but they are more stringently applied to those seeking diversion." State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995), overruled on other grounds by Hooper, 29 S.W.3d at 9.

The trial court must examine the following factors prior to making a decision regarding the grant or denial of judicial diversion:
> (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the status of the accused's physical and mental health, and (f) the deterrence value to the accused as well as others. The trial court should also consider whether judicial diversion will serve the ends of justice--the interests of the public as well as the accused.

State v. Lewis, 978 S.W.2d 558, 566 (Tenn. Crim. App. 1997) (citation omitted). Additionally, the trial court may consider the appellant's "attitude, his behavior since arrest, his home environment, current drug usage, emotional stability, past employment, general reputation, family responsibilities, and the attitude of law enforcement." Id. Furthermore,
> the record must reflect that the court has weighed all of the factors in reaching its determination. The court *must explain on the record* why the defendant does not qualify under its analysis, and if the court has based its determination on only some of the factors, it must explain why these factors outweigh the others.

State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998) (citation omitted) (emphasis added).

The appellant argues, and the State concedes, that the trial court did not explain on the record the factors used in denying judicial diversion. The trial court simply stated that
> [t]he Court also finds that this is not a proper case for [judicial] diversion, because this defendant needs to lose his right to ever possess a firearm. It is important that a felony conviction be recorded against this defendant to prohibit his possession of firearms, again.

-3-

As was the case in Electroplating, Inc., 990 S.W.2d at 229,

> the trial court did not place on the record an adequate explanation for
> denying the defendant's request for judicial diversion . . . . The trial
> court did not explain whether it had considered all of the other factors
> or discuss the weight given to the applicable factors.

In support of his application for judicial diversion, the appellant demonstrated at the sentencing hearing that he has an associates degree in electrical engineering and has an excellent work record. He also presented numerous witnesses, who testified regarding his excellent reputation and involvement in the community. He testified that his criminal history consists of one speeding ticket, and he has no history of drug abuse. All of these factors weigh in favor of the granting of judicial diversion. See Lewis, 978 S.W.2d at 566-67; State v. Jennifer E. Oakley, No. W1999-00850-CCA-R3-CD, 2000 WL 1670930, at *3 (Tenn. Crim. App. at Jackson, October 27, 2000).

The State argues that the trial court correctly denied the appellant judicial diversion, emphasizing the circumstances of the offense and the appellant's failure to accept responsibility for his actions. The credibility of the appellant's testimony and the sincerity of the appellant's remorse are matters for the trial court to decide. See State v. Wakefield Davis, No. W1999-00990-CCA-R3-CD, 2000 WL 205056, at *4 (Tenn. Crim. App. at Jackson, February 17, 2000). For guidance to the trial court on remand, we note that "continued denial of guilt should not, in and of itself, preclude judicial diversion. 'An admission of guilt is not a valid prerequisite to the granting of . . . diversion.'" Lewis, 978 S.W.2d at 567(alteration in original); see also State v. Trevis Maynard, No. 01C01-9303-CC-00086, 1994 WL 53861, at *3 (Tenn. Crim. App. at Nashville, February 24, 1994).

Again, there is no proof contained in the record that the trial court considered any of the foregoing factors. The trial court's only explanation for the denial of judicial diversion was that the appellant needed to remain a convicted felon in order to lose his right to possess a firearm. Additionally, the trial court did not explain why this consideration outweighed the other positive factors in favor of granting judicial diversion. Accordingly, we remand to the trial court for further proceedings in connection with this issue. See State v. Clay F. Dean, No. W1999-01757-CCA-R3-CD, 1999 WL 1532154, at *2 (Tenn. Crim. App. at Jackson, December 17, 1999).

### B. Alternative Sentencing

Because the reasons given for the denial of probation are somewhat vague and conclusory, we have concluded that the wisest course of action is to also remand the question of full probation to the trial court. In connection with this issue, we note that the trial court must review the following factors in determining the manner of service of the appellant's sentence: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statement by the appellant in his own behalf; and (7) the appellant's potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-102 and -103 (1997), -210 (2000 Supp.); see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991).

The appellant contends that the trial court erred in not granting him an alternative sentence. However, the record reveals that the trial court sentenced the appellant to split confinement, which is an alternative sentence. See Tenn. Code Ann. § 40-35-104(c)(4) & (5) (1997); State v. Judy Martin, No. W2000-01472-CCA-R3-CD, 2001 WL 55629, at *5 (Tenn. Crim. App. at Jackson, January 23, 2001), perm. to appeal denied, (Tenn. 2001). Accordingly, we conclude that the appellant's main complaint is that the trial court did not sentence him to full probation.

The trial court's denial of full probation was based upon the circumstances of the offense and the need for deterrence. In order for probation to be denied solely upon the seriousness of the offense "'the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree,' and the nature of the offense must outweigh all factors favoring a sentence other than confinement." Bingham, 910 S.W.2d at 454 (citing State v. Hartley, 818 S.W.2d 370, 374-375 (Tenn. Crim. App.1991)); see also State v. Fletcher, 805 S.W.2d 785, 788-89 (Tenn. Crim. App.1991). In describing the nature of the offense, the trial court summarily stated that "when someone gets hit on the head with a bullet, that's making it pretty horrific, in this Court's opinion." However, there is no evidence in the record that the trial court found that this consideration alone outweighed all factors in favor of full probation.

We also note that the trial court denied the appellant full probation because of the potential deterrent effect of the appellant's incarceration. In Hooper, 29 S.W.3d at 10-12, our supreme court outlined factors which are instructive in determining whether deterrence may support a denial of full probation. Taking the guidelines of Hooper into consideration during our review of the record, we conclude that there was no proof adduced at the sentencing hearing to indicate that confining the appellant would have a deterrent effect on "others similarly situated and likely to commit similar crimes." Id. at 10.

### III. Conclusion

Based upon the foregoing, we remand this case to the trial court for proceedings consistent with this opinion.

_____
NORMA McGEE OGLE, JUDGE